**FRANKLIN v. GRAFF et al.**

No. 15378—Opinion Filed June 9, 1925.

**Contracts—Action for Breach of Chautauqua Contract—Failure of Evidence—Lack of Performance by Plaintiff.**

Where plaintiff brings suit for breach of a Chautauqua contract and for damages and alleges that the contract was made with him as party of the first part and the evidence shows that the contract was made with the Standard Lyceum & Chautauqua System, a corporation, of which plaintiff was general manager, and the evidence further shows that plaintiff tendered performance of the contract in the name of Cadmean Chautauquas instead of the Standard as provided in the contract, and without the consent of the defendants, it is not error for the court to sustain a demurrer to the evidence and dismiss the case.

(Syllabus by Threadgill, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Logan County; Charles C. Smith, Judge.

Action by C. B. Franklin against Charles Graff et al., for breach of contract and damages. Judgment for defendants, and plaintiff appeals. Affirmed.

H. T. Deupree and Porter H. Morgan, for plaintiff in error.

Dale & Bierer and John Adams, for defendants in error.

Opinion by THREADGILL, C. This action is based upon an alleged breach of a Chautauqua contract made by the parties August 25, 1921, for the Chautauqua season for 1922. The heading and first paragraph of said contract were as follows:

"C. O. Bruce, President, C. B. Franklin, Gen Mgr.

"Contract Five Day Service

"Standard Lyceum & Chautauqua System.
"322 New England Bldg,,
"Topeka, Kansas.

"This contract was made and entered into this 25th day of August, 1921, by and between C. B. Franklin, general manager of the Standard Lyceum & Chautauqua System of Topeka, Kan., party of the first part and the undersigned parties of the second part, witnesseth."

The contract in general provided that the plaintiff should furnish a five day high class entertainment of Standard attractions, also tent, superintendent and advertisement, except in the local newspapers, and the second parties were to purchase 280 tickets at $2.50 a ticket, making $7.000 as the minimum compensation to the first party for the entertainment, 20 per cent. of which was to be paid 15 days before the opening date and the balance on the opening day. The parties of the second part were to furnish grounds, or place, seats, etc., for holding the Chautauqua. It was further agreed that the written contract between the parties should not be canceled except by consent of both parties. The contract was to become valid when signed by five or more as parties of the second part and approved by the Standard Lyceum & Chautauqua System at their office. At the end of the contract it says: "Signed for Standard Lyceum & Chautauqua System, Carl K. Linge (Agent) Asst. Mgr.," and then there are the names of 20 persons, including the defendants, signed to the contract as parties of the second part.

On March 10, 1922, after this contract was made, defendants received a letter from Carl K. Linge, who seems to have been agent for Franklin and the Standard Lyceum & Chautauqua System, stating that it had been decided to operate the Chautauqua under the name of Cadmean inasmuch as Mr. Franklin owned both the Cadmean and the Standard Systems. The date for the entertainment was fixed for June 20th to July 4th, inclusive. Defendants refused to accept the entertainments and refused to make any arrangements for same, and plaintiff sent his agents offering the attractions of the Cadmean System, which were rejected by the defendants, and which they refused to take any part in, and this action was brought for breach and damages. Plaintiff pleaded the contract and breach and stated facts of actual damages, and defendants answered by pleading that they contracted with the Standard Lyceum & Chautauqua System and for its attractions, and plaintiff failed to furnish this system of entertainments and offered to substitute the Cadmean System. The issues were tried to a jury March 21, 1923, and at the close of plaintiff's evidence the court sustained a demurrer to the same and plaintiff has brought the case here for review asking for reversal and a new trial.

There is but one question to be considered, and that is, whether or not the court committed error in sustaining the demurrer to the plaintiff's evidence. It was admitted that the defendants signed the contract above described. It was necessary for the plaintiff in making out his case to show that the contract was with him and the breach of same by defendants. The evidence shows that after the contract was made, in

December following, one of the defendants wrote to the Standard Chautauqua System of Topeka, Kan., enclosing a copy of the contract left with him for all the defendants and stating that they desired to cancel the contract. giving various reasons; that in January he received an answer saying they could not cancel the contract for various reasons, and there were other letters to the same effect on both sides until about March 10, 1922, when the defendants received a letter written on the letterhead paper of the Standard Chautauqua System, Incorporated, in which it was stated that they had decided to give the Chautauqua under the name of Cadmean inasmuch as Mr. Franklin owned both the Cadmean and the Standard Systems, and this letter was signed by Carl S. Linge, and under his name the words, "Cadmean Chautauquas," and another letter was written to the defendants setting the time for the Chautauqua June 30th, to July 4th inclusive, and this letter was signed by C. Benj. Franklin, Mgr. The testimony further showed that the plaintiff, Franklin, had bought the right from the Standard Company, which was a corporation, to use its name and give Chautauquas in Oklahoma and other states for the year 1922, and that he also had the right to give such entertainments under the name of Cadmean, and he testified that it made no difference which name he operated under. the entertainments were the same, except in the matter of cost to him; that the Standard cost him $500 more for every entertainment than the Cadmean; he admitted that the contract called for the Standard Company's entertainments and that he changed the name without the consent of defendants. The testimony shows that at the time set for giving the Chautauqua, he sent his agents and entertainers to hold the same and complied with the requirements of the contract in furnishing the tent and advertising matter. and the defendants refused to sell the tickets, provide the place for holding the Chautauqua, or do anything that they had agreed to do, and that he was damaged as alleged in his petition. The question as to whether the demurrer to the evidence should have been sustained must be determined primarily by the meaning of the contract upon which the action was based and which was signed by the parties to it and introduced in evidence without objection.

Plaintiff contends that the contract was made with him personally and he alone was party of the first part and the words, "Gen-eral Manager of the Standard Lyceum & Chautauqua System of Topeka, Kansas," were merely descriptive of a position he occupied, while the defendants contend that the contract was with the Standard Lyceum & Chautauqua System, and plaintiff was its agent and authorized to make the contract for the company subject to its approval. The trial court seems to have sustained the contention of the defendants in this respect. The latter part of next to the last paragraph of the contract reads as follows:

"This contract becomes valid when signed by five or more as parties of the second part and approved by the Standard Lyceum & Chautauqua System at their office."

This language is plain and can have but one meaning. It was necessary for the company to approve the contract to make it valid. It was not for the plaintiff, Franklin, to approve it, but for the company. Then the contract is signed by Carl K. Linge. as assistant manager of the company.

The plaintiff is described at the beginning of the contract as general manager and the contract was not to become valid until approved by the company at its office, and Linge signed for the company as assistant manager, all of which taken together shows conclusively that Franklin was not party of the first part, but the Standard Lyceum & Chautauqua System was, and Franklin was authorized to make the contract for the company subject to its approval. To construe the contract otherwise would be contrary to the plain meaning of the words indicating the intention of the parties. There is no question of assignment in the case as plaintiff claims to be the first party in the contract. A copy of this contract was made a part of plaintiff's petition, but the defendants did not raise any objection to it by motion or demurrer as inconsistent with the petition, but raised their objections in their answer by general denial, and alleged that they contracted for the Standard Lyceum & Chautauqua System, and that plaintiff, without their consent, changed the agreement and only offered them the Cadmean Chautauquas, which they did not contract for and which they refused to receive. For plaintiff to prevail it was necessary for him to prove that the contract upon which he bases his action was between him and the defendants and that he tendered the entertainments of the Standard Lyceum & Chautauqua System, and that this contract was breached on the part of the defendants, all of which he alleges in his petition, and

which we think his evidence fails to prove, and the court committed no error in sustaining the demurrer and dismissing the cause of action.

We, therefore, recommend that the judgment of the court be affirmed.

By the Court: It is so ordered. ·

Note.—See under (1) 13 C. J. p. 755.